THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Magistrate No. 26-665 |
| | **[UNDER SEAL]** |
| RAYMOND EUGENE CHANDLER III | |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Corey N. Cochran, being duly sworn, hereby depose and state the following:

## I.    INTRODUCTION

1.    This affidavit is made in support of a criminal complaint charging RAYMOND EUGENE CHANDLER III ("CHANDLER") with Influencing, Impeding or Retaliating against a Federal Official by Threatening a Family Member, in violation of Title 18, United States Code, Section 115(a)(1)(A), and with Influencing, Impeding or Retaliating against a Federal Official by Threat, in violation of Title 18, United States Code, Section 115(a)(1)(B).

2.    I am a Task Force Officer ("TFO") of the United States Department of Justice, Federal Bureau of Investigation ("FBI"), and have been so employed since February 2026.  I have been employed as a Police Officer with the Pittsburgh Bureau of Police since December 2017.  Since February 2024, I have served as a detective within the Pittsburgh Bureau of Police's Intelligence Unit.  As a Task Force Officer with the FBI, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18.

3.    I am currently assigned to the Joint Terrorism Task Force ("JTTF") in the FBI

Pittsburgh Division.  In this capacity, I am charged with investigating possible violations of federal criminal law.  By virtue of my FBI employment, I perform and have performed a variety of investigative tasks.  I have received training and have gained experience in the conduct of federal criminal investigations, the execution of federal search warrants and seizure and arrest warrants, and the identification and collection of computer-related evidence.

4.      The facts set forth in this affidavit are based on my personal knowledge, the knowledge obtained during my participation in this investigation, the knowledge obtained from other individuals, including other law enforcement personnel, review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the criminal complaint, this affidavit does not set forth each and every fact that I have learned during the course of this investigation. However, I have not omitted any fact that may tend to undermine a finding of probable cause.

5.      For the reasons set forth below, there is probable cause to believe that, on or about April 18, 2026, in the Western District of Pennsylvania, the defendant, RAYMOND EUGENE CHANDLER III, did threaten to assault and murder a member of the immediate family of a United States official, and a United States Official; that is, the daughter of Victim 1, a Member of Congress whose identity is known to your Affiant, with intent to impede, intimidate, interfere with, and retaliate against said United States official while he was engaged in, and on account of, the performance of his official duties by leaving a voicemail for Victim 1, in which CHANDLER stated, "Sir, I have, uh, I'm calling this morning 'cause I want you to imagine a scenario. I want you to imagine a scenario where all the 1200 billionaires in this country, all their properties are

surrounded simultaneously by a thousand people. So imagine your house, your daughter's house, everyone you know and love who is also rich. Imagine every single one of those homes being surrounded by a thousand people. Then imagine them all getting a text and then, then suddenly taking out their pocket knives, walking slowly towards your house with 10, you got your 10 guards or whatever against a thousand people, and then they come and they pull you out of your house and they slit your throat and they slit your daughter's throat and they slit everyone's throat. That you know, sir, that is the future. It's not a future I want, it's not a future I'm advocating for, but wealth concentration has gotten so bad in this country. The greed has gotten so bad. People are suffering so much, sir, that that is what is in our future. You will not escape their wrath. We must redistribute the wealth away from people like you," or words to that effect, in violation of Title 18, United States Code, Sections 115(a)(1)(A) and 115(a)(1)(B).

6.      For the reasons set forth below, there is also probable cause to believe that, on or about April 29, 2026, in the Western District of Pennsylvania, the defendant, RAYMOND EUGENE CHANDLER III, did threaten to murder a United States Official; that is, President Donald J. Trump, with intent to impede, intimidate, interfere with, and retaliate against said United States official while he was engaged in, and on account of, the performance of his official duties by leaving a voicemail  for Victim 1, a Member of Congress whose identity is known to your Affiant, in which CHANDLER stated, "You've probably getting quite used to my voice. Sir, I'm calling this evening because what I want you to do is I want you to take a firearm. I want you to put it in your hand. I want you to walk into the Oval Office. I want you to put that firearm to the President's head, and I want you to pull the trigger and I want you to kill him. I am petitioning you, Senator for redress of grievances. My redress of grievances is that this president is awful . . . He's a liar among all liars. He's a great deceiver. He's the antichrist. I want you to walk into the

Oval Office with a gun in your hand. I want you to put it to his temple, and I want you to pull the trigger. That is what I want you to do as my agent. That's what I want you to do as my elected official. That's what I am petitioning you to do with my free speech. I want you to kill the President. I want you to assassinate the President. That's what I want you to do. Now, Senator, are you gonna come after me? Are you going to try me because of my voice and what I said?," or words to that effect, in violation of Title 18, United States Code, Section 115(a)(1)(B).

## II.    STATUTORY PROVISIONS

7.    Title 18, United States Code, Section 115(a)(1)(A), criminalizes threats to assault or murder a member of the immediate family of a United States official with the intent to impede, intimidate, or interfere with such official while engaged in the performance of official duties, or with intent to retaliate against such official on account of the performace of official duties.

8.    Title 18, United States Code, Section 115(a)(1)(B), criminalizes threats to assault or murder United States officials with the intent to impede, intimidate, or interfere with such officials while engaged in the performance of official duties, or with intent to retaliate against such officials or law enforcement officers on account of the performace of official duties.

9.    As used in these statutory provisions, "United States official" includes the President of the United States and a Member of Congress.  18 U.S.C. § 115(c)(4).

## III.    THE "TRUE THREAT" STANDARD

10.    "True threats" are not protected speech under the First Amendment.  Based upon training, experience, and conversations with federal prosecutors, I know that the United States Supreme Court reviewed the standard for a "true threat" prosecution in *Counterman v. Colorado*, 600 U.S. 66 (2023).  In short, a "true threat" requires proof that a statement was objectively threatening and that a speaker acted recklessly when making the statement.

4

IV.    **PROBABLE CAUSE**

11.    The allegations in this criminal complaint pertain to recent threats communicated by CHANDLER, who resides in the Western District of Pennsylvania, to Victim 1, a Member of Congress whose identity is known to your Affiant.  While some of the actions described in this affidavit relate to very recent conduct, other actions have occurred in the months prior to the investigation of CHANDLER by the FBI.

12.    On April 28, 2026, Victim 1's representatives provided the FBI information regarding CHANDLER. That information summarized recent voicemails left by CHANDLER in April 2026, along with their concerns with CHANDLER's escalating calls for violence. In addition, Victim 1's representatives provided the FBI with numerous recordings of voicemails that CHANDLER left for Victim 1.  To date, your Affiant has reviewed calls provided by Victim 1's representatives that span the time period of April 2025 through April 2026.

13.    In the voicemails provided to the FBI, CHANDLER begins by identifying his name and address, which is located within the Western District of Pennsylvania.  Of note, the voicemail system used by Victim 1's office automatically records the number associated with the wireless caller.  Publicly available information on CHANDLER confirmed that the phone number used to leave voicemails for Victim 1 is associated with CHANDLER.  Accordingly, your Affiant submits that CHANDLER left the voicemails reviewed by your Affiant.

14.    In many calls, CHANDLER advocates for various acts of violence against U.S. Officials, their families, and agents of the U.S. Immigration and Customs Enforcement (ICE).[1] For example:

---

[1] Your Affiant notes that, at times, CHANDLER communicates that acts of violence are against his religion, that he is not advocating for violence, or that he would seek such violence, to include public hangings.  Such statements are inconsistent with the context and content of the other voicemails left by CHANDLER.

a. On or about April 18, 2025, CHANDLER left a voicemail for Victim 1 in which he communicated his concern that some people would be sent to death camps and that he recently bought a seven-inch combat knife and a dagger because he is terrified that his government would kill him.

b. On or about April 18, 2025, CHANDLER left a voicemail for Victim 1 in which he communicated his support for armed resistance against ICE, along with his willingness to go to war and to "personally kill."

c. On or about June 11, 2025, CHANDLER left a voicemail for Victim 1 in which he alleged that Victim 1 had broke his covenant with God and voiced his support for attacks against ICE and law enforcement.

d. On or about June 17, 2025, CHANDLER left a voicemail for Victim 1 in which he communicated his intent to build gallows to hang Victim 1.

e. On or about January 12, 2026, CHANDLER left a voicemail for Victim 1 in which he communicated his realization that violence has become necessary. In this voicemail, CHANDLER also communicated his intent to organize armed resistance against ICE and identified those who deserve death, to include President Trump.

15.    As set forth above, on or about April 18, 2026, CHANDLER left a voicemail for Victim 1 in which he stated, "Sir, I have, uh, I'm calling this morning 'cause I want you to imagine a scenario. I want you to imagine a scenario where all the 1200 billionaires in this country, all their properties are surrounded simultaneously by a thousand people. So imagine your house, your daughter's house, everyone you know and love who is also rich. Imagine every single one of those homes being surrounded by a thousand people. Then imagine them all getting a text and then, then suddenly taking out their pocket knives, walking slowly towards your house with 10, you got your

10 guards or whatever against a thousand people, and then they come and they pull you out of your house and they slit your throat and they slit your daughter's throat and they slit everyone's throat. That you know, sir, that is the future. It's not a future I want, it's not a future I'm advocating for, but wealth concentration has gotten so bad in this country. The greed has gotten so bad. People are suffering so much, sir, that that is what is in our future. You will not escape their wrath. We must redistribute the wealth away from people like you," or words to that effect.

16.     Also as set forth above, on or about April 29, 2026, CHANDLER left a voicemail for Victim 1 in which he stated, "You've probably getting quite used to my voice. Sir, I'm calling this evening because what I want you to do is I want you to take a firearm. I want you to put it in your hand. I want you to walk into the Oval Office. I want you to put that firearm to the President's head, and I want you to pull the trigger and I want you to kill him. I am petitioning you, Senator for redress of grievances. My redress of grievances is that this president is awful . . . He's a liar among all liars. He's a great deceiver. He's the antichrist. I want you to walk into the Oval Office with a gun in your hand. I want you to put it to his temple, and I want you to pull the trigger. That is what I want you to do as my agent. That's what I want you to do as my elected official. That's what I am petitioning you to do with my free speech. I want you to kill the President. I want you to assassinate the President. That's what I want you to do. Now, Senator, are you gonna come after me? Are you going to try me because of my voice and what I said?," or words to that effect.

17.     Due to the content and context of CHANDLER's voicemails, to include CHANDLER's escalating calls for violence, increased safety measures have been put into place for some of the U.S. Officials, immediate family of U.S. Officials, and their staff.

## V.     **CONCLUSION**

18.     Given the context and content of the communications, and based upon my training

and experience, your Affiant submits that CHANDLER's statements on April 18, 2026, and April 29, 2026, were objectivey threatening.  Furthermore, your Affiant submits that CHANDLER consciously disregarded a substantial risk that his communications would be viewed as threatening violence against a member of the immediate family of a United States official; that is, Victim 1's daughter, and United States officials; that is, Victim 1 and President Trump.  Finally, your Affiant submits that CHANDLER issued the threats with intent to impede, intimidate, and interfere with, and in retaliation against, these United States officials on account of the performance of official duties.

19.    Based on the aforementioned information, I respectfully submit that there is probable cause to believe that CHANDLER violated Title 18, United States Code, Sections 115(a)(1)(A) and 115(a)(1)(B).

REQUEST FOR SEALING

20.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrants.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.

21.    Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, notify confederates or otherwise seriously jeopardize the investigation.

The above information is true and correct to the best of my knowledge, information and belief.

/s/Corey N. Cochran
Corey N. Cochran
Task Force Officer
Federal Bureau of Investigation

The Affiant attested to this Affidavit by telephone pursuant to Fed. R. Crim. P. 4.1(b)(2)(A), this 1st day of May, 2026.
**This matter shall remain under seal until further Order of the Court.**

_____
HONORABLE PATRICIA L. DODGE
United States Magistrate Judge

9